J-S66045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: E.J.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.E.A., MOTHER | : | No. 1182 WDA 2015 |

Appeal from the Decree entered June 25, 2015,
in the Court of Common Pleas of Jefferson County,
Orphans' Court, at No(s): 19A-2014 O.C.

| | | |
|---|---|---|
| IN RE: A.F.M., III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.E.A., MOTHER | : | No. 1183 WDA 2015 |

Appeal from the Decree entered June 25, 2015,
in the Court of Common Pleas of Jefferson County,
Orphans' Court, at No(s): 18A-2014 O.C.

BEFORE:  OLSON, STABILE, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED NOVEMBER 17, 2015**

C.E.A. (Mother) appeals from the decree entered June 25, 2015, in the

Court of Common Pleas of Jefferson County, which terminated involuntarily

her parental rights to her minor sons, E.J.M. (born in March of 2014) and

A.F.M., III (born in February of 2013) (collectively, the Children).[1]  We

affirm.

---

\* Senior Judge assigned to the Superior Court.

[1] The Children's father, A.F.M., Jr. (Father), relinquished his parental rights
voluntarily on December 16, 2014.  Father is not a party to the instant
appeal.

The Children were placed in foster care on April 15, 2014, as a result of Mother's impending incarceration.[2]   N.T., 6/10/2015, at 7, 21. Additionally, Jefferson County Children and Youth Services (CYS) had concerns with respect to the condition of Mother's home, Mother's failure to seek appropriate medical care for the Children, and "some minor neglect issues," like providing the Children with inappropriate food. *Id.* at 7-8, 21. The Children were adjudicated dependent on April 30, 2014. *Id.* at 7-8. Aggravated circumstances were found, due to the fact that Mother's parental rights previously had been terminated as to four of her other children. *Id.* at 10; Exhibit 3.  On October 29, 2014, the Children's permanency goals were changed to adoption.   *Id.* at 17.

On March 25, 2015, CYS filed petitions to terminate Mother's parental rights to the Children involuntarily.  A termination hearing was held on June 10, 2015.   On June 25, 2015, the orphans' court entered its decree terminating Mother's parental rights.  Mother timely filed notices of appeal, along with concise statements of errors complained of on appeal.

Mother now raises the following issues for our review.

[1.] Whether the [orphans'] court committed an error of law as the clear and positive evidence was insufficient to terminate the rights of the mother[?]

_____

[2] Mother was incarcerated as a result of a probation violation.  N.T., 6/10/2015, at 32.  Her minimum release date was in October of 2015. *Id.* at 23.

- 2 -

[2.] Whether the [orphans'] court's finding that termination was in the best interest of the [C]hildren was against the weight of the evidence as CYS failed to articulate specific dangers to the [C]hildren prior to the mother's incarceration, and [M]other had been told by her caseworker that she was "doing well" in caring for the [C]hildren[?]

[3.] Whether the [orphans'] court erred by [*sic*] as a matter of law in finding that [M]other failed to maintain contact with the [C]hildren by not requesting visitation while incarcerated, when [M]other had been told specifically by her caseworker that such a request would be denied[?]

[4.] Whether the [orphans'] court erred in failing to give sufficient weight to the evidence that CYS did not have a safety plan in place, and that CYS was not considering removing the [C]hildren from the home until the mother was incarcerated[?]

Mother's brief at 4 (suggested answers omitted).

Mother argues that CYS failed to present clear and convincing evidence that her parental rights should be terminated. ***Id.*** at 8-14. Mother asserts, *inter alia*, that she was the Children's primary caregiver prior to her incarceration, and that CYS did not offer evidence of any "specific dangers" to the Children while they were residing with her. ***Id.*** at 8, 10, 12. Mother also contends that she did not request visits with the Children while incarcerated because a CYS caseworker told her that visits would not be permitted, but that she has been using "what resources she had in attempting to maintain contact with her infant sons…." ***Id.*** at 8, 11-12.

We consider Mother's claims mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and

- 3 -

credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as

Section 2511(b), in order to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa.

Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here,

we analyze the court's decision to terminate under Sections 2511(a)(1) and

(b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> ***
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

We first address whether the orphans' court abused its discretion by

terminating Mother's parental rights pursuant to Section 2511(a)(1). To

meet the requirements of this section, "the moving party must produce clear

and convincing evidence of conduct, sustained for at least the six months

prior to the filing of the termination petition, which reveals a settled intent to

- 5 -

relinquish parental claim to a child or a refusal or failure to perform parental duties." **In re Z.S.W.**, 946 A.2d 726, 730 (Pa. Super. 2008) (citing **In re Adoption of R.J.S.**, 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze Section 2511(b). **Id.** (quoting **In re Adoption of Charles E.D.M.**, 708 A.2d 88, 92 (Pa. 1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." **In re B.,N.M.**, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (quoting **In re C.M.S.**, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004)). Rather, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." **Id.** (citation omitted). Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. **In re Adoption of S.P.**, 47 A.3d 817, 828 (Pa. 2012) (discussing **In re Adoption of McCray**, 331 A.2d 652 (Pa. 1975)).

Instantly, the orphans' court found that Mother failed to perform parental duties for more than six months prior to the filing of the termination

petition. Orphans' Court Opinion, 6/25/2015, at 4-5. The court reasoned that Mother did not request visits with the Children after being incarcerated, and that Mother only wrote to the Children twice. *Id.* at 5.

After a thorough review of the record in this matter, we conclude that the orphans' court did not abuse its discretion. During the termination hearing, CYS caseworker, Natalie Young, testified that Mother sent two cards to the Children since being incarcerated in April of 2014. N.T., 6/10/2015, at 12. The first card was sent in December of 2014, and the second card was sent during the end of March or beginning of April of 2015. *Id.* To the knowledge of Ms. Young, Mother made no other efforts at contacting the Children. *Id.* at 14-15, 17-18, 27. Mother did not request visits with the Children. *Id.* at 15. Mother called CYS on an unspecified number of occasions, and left voicemails requesting return calls. *Id.* at 14. However, these calls were made only recently, within "the last two weeks." *Id.* Ms. Young noted that Mother has been participating in various services while incarcerated, but that she had not yet started or completed a parenting program. *Id.* at 12-13.

Mother testified that she sent "six to eight" cards for the Children to CYS since being incarcerated. *Id.* at 33, 40. Mother also reported that her mother remains in contact with the Children's foster mother, and that her mother tells her how the Children are doing. *Id.* at 33-34. Mother admitted that she did not request visitation with the Children, but claimed that her prior CYS caseworker told her that visitation would not be permitted. *Id.* at

34. Mother stated that she has called CYS on multiple occasions, and talked about "[c]ourt hearings and stuff," and that she completed a parenting program while incarcerated, *inter alia*. *Id.* at 32, 34, 38-39.

Thus, the record supports the finding of the orphans' court that Mother refused or failed to perform parental duties for a period of at least six months prior to the filing of the petitions to terminate her parental rights on March 25, 2015. The orphans' court was free to reject Mother's testimony that she sent six to eight cards to the Children during her incarceration, and to conclude that Mother wrote to the Children only twice. Moreover, Mother did not request visits. Mother's minimal effort at maintaining contact with the Children is not sufficient to preserve her parental rights. She is not entitled to relief.

We next consider whether the orphans' court abused its discretion by terminating Mother's parental rights under Section 2511(b). We have discussed our analysis under Section 2511(b) as follows.

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis

necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Here, the orphans' court concluded that terminating Mother's parental rights would best serve the needs and welfare of the Children. Orphans' Court Opinion, 6/25/2015, at 6. The court emphasized that the Children are bonded with their foster parents, and that they likely have little, if any, recollection of Mother. *Id.*

We again conclude that the orphans' court did not abuse its discretion. Ms. Young testified that the Children have resided with their pre-adoptive foster parents since being removed from Mother on April 15, 2014. N.T., 6/10/2015, at 7, 15, 17. The Children are bonded with their foster parents, and are thriving in their care. *Id.* at 17, 26. Ms. Young recounted that she visited the Children at their foster home the day before the termination hearing. *Id.* at 16. During the visit, Ms. Young observed E.J.M. refer to the foster father as "Daddy," and A.F.M., III, referred to the foster mother as "Mom" or "Mommy." *Id.* at 16-17, 27. Ms. Young opined that the Children's best interest would be served by terminating Mother's parental rights, so that they can be adopted by their foster parents. *Id.* at 20.

Thus, the record supports the conclusion of the orphans' court that it would best serve the Children's needs and welfare to terminate Mother's parental rights. At the time the Children were removed from Mother's care, A.F.M., III, was about fourteen months old, while E.J.M. was about a month

and a half old. Mother has had minimal contact with the Children since her incarceration, and there is no evidence to suggest that the Children are bonded with Mother. In contrast, the Children are bonded with their pre-adoptive foster parents. Adoption will allow the Children to remain in the care of their foster parents, where they are thriving. Allowing Mother to preserve her parental rights would deny the Children the opportunity for permanence and stability. No relief is due.

Accordingly, because we conclude that the orphans' court did not abuse its discretion by terminating Mother's parental rights to the Children involuntarily, we affirm the decree of the orphans' court.

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2015